UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DYLAN JOSIAH BLUE BIRD,<br><br>Defendant. | 3:22-CR-30114-RAL<br><br><br>OPINION AND ORDER DENYING<br>MOTION TO DISMISS |

Defendant Dylan Blue Bird is charged with one count of assaulting, resisting, and impeding a federal officer under 18 U.S.C. §§111(a) and (b). Doc. 1. Defendant has moved to dismiss the indictment, Docs. 22 and 24, and for the reasons explained below, that motion is denied.

**I.    Background**

On September 30, 2022, Rosebud Sioux Tribe Law Enforcecement Services (RSTLES) Officer Jay Romero was on patrol within the exterior boundaries of the Rosebud Sioux Indian Reservation. Doc. 23 at 1. The Rosebud Sioux Tribe, a federally recognized Indian tribe, operates RSTLES to provide policing on the Reservation. The United States, through the Department of the Interior, Bureau of Indian Affairs, has contracted with the Tribe under the Indian Self-Determination and Education Assistance Act of 1975 to provide federal funding for law enforcement services on the Reservation through what is commonly known as a "638 contract."

While on patrol, Officer Romero observed a vehicle passing him in a no-pass zone at what appeared to be a high rate of speed. Id. at 1–2. Officer Romero activated his lights and attempted

to initiate a traffic stop of the suspect, who was later identified as the Defendant. Id. According to Officer Romero, the vehicle sped away, and thus began a long high-speed chase through the reservation with the suspect's vehicle at times exceeding speeds of 100 miles per hour. Id. at 2. During the chase, Officer Romero says he observed metal and paper objects being thrown from the vehicle. Id.

Several other officers joined the chase, and the vehicle eventually led the officers outside of the Reservation boundaries. Id. At some point thereafter, the Defendant turned the vehicle around and drove head on, without physical contact, into Officer Richard Kumley, another RSTLES officer who had joined Officer Romero in pursuing the Defendant. Id. Officer Kumley apparently swerved his patrol car off the road to avoid the Defendant's vehicle. The officers later deployed spikes and stopped the Defendant's vehicle. Id. The Defendant was arrested for several tribal offenses, aggravated assault, and cited for traffic violations. Id.

## II.     Legal Standard

In reviewing a motion to dismiss a criminal indictment, this Court must "accept the allegations stated in the indictment as true and ask whether they can form the basis of the charged offense." United States v. Hansmeier, 988 F.3d 428, 436 (8th Cir. 2021) (citation omitted). "The question of whether the facts alleged in an indictment adequately state an offense therefore turns on the elements of that offense." Id.

## III.    Discussion

The United States charged the Defendant with Assault on a Federal Officer under 18 U.S.C. § 111. In general, a person has committed an assault on a federal officer if they forcibly assault, resist, oppose, impede, intimidate, or interfere with a federal officer who is engaged in the performance of their official duties. 18 U.S.C. § 111(a). Courts in the Eighth Circuit have

2

routinely held that a tribal police officer acting under a 638 contract with BIA is considered a federal employee for the purposes of the assault on a federal officer statute. United States v. Bettelyoun, 16 F.3d 850, 853–54 (8th Cir. 1994); United States v. Janis, 40 F. Supp. 3d 1133, 1135 (D.S.D. 2014), aff'd, 810 F.3d 595 (8th Cir. 2016); United States v. Young, 85 F.3d 334, 335 (8th Cir. 1996). A tribal police officer is considered a federal officer "regardless of whether the officer is enforcing a tribal, state, or federal law, so long as he is engaged in the performance of his official duties rather than a personal frolic of his own." Janis, 40 F. Supp. at 1135.

"In a § 111 prosecution involving tribal officers . . . the court must determine threshold legal questions—whether the tribal contract, and the manner in which BIA has designated particular tribal officers to perform under that contract, qualify under 25 U.S.C. § 2804(a)." Bettelyoun, 16 F.3d at 853. But it us up to the "jury to decide whether the government proved beyond a reasonable doubt that the assault victims were in fact federal officers who were engaged in the performance of their official duties." Id. Defendant does not dispute that the Tribe's 638 contract with BIA could qualify under 25 U.S.C. § 2804(a), at least when a tribal officer is performing their official duties within the boundaries of the reservation. Defendant argues, however, that a tribal officer may not be considered a federal officer pursuant to 25 U.S.C. § 2804(f) if they are enforcing tribal law *off the reservation*. Doc. 23 at 7.

Defendant's argument is misplaced. Subsection (f) of § 2804 provides in relevant part, that "while acting under authority granted by the Secretary under subsection (a), a person who is not otherwise a Federal employee shall be considered to be . . . an employee of the Department of the Interior only for purposes of [the assault on a federal officer statute]." 25 U.S.C. § 2804(f)(1). Under subsection (a), "[t]he Secretary may authorize a law enforcement officer of such an agency to perform any activity the Secretary may authorize under section 2803 of this title." 25 U.S.C. §

3

2804(a)(2). Section 2803 provides that the Secretary "may charge employees of the Bureau with law enforcement responsibilities." 25 U.S.C. § 2803. Among other things, the Secretary may authorize those employees to "make an arrest without a warrant for an offense committed in Indian country if . . . the offense is committed in the presence of the employee [or] the offense is a felony and the employee has probable cause to believe that the person to be arrested has committed, or is committing, the felony." § 2803(3)(A).

Here, it appears that at the very least the Defendant committed a crime in the presence of tribal law enforcement while still on the reservation—he was evading Officer Romero and leading tribal police, including Officer Kumley, on a high-speed chase. Nothing in Section 2803 strips a tribal police officer of protection as a federal officer simply because a tribal member suspected of committing a crime in Indian country was able to escape the reservation in a high-speed chase with tribal officers trying to effectuate the arrest. Section 2803 after all does not say a tribal police officer can only make an arrest *in Indian country* for an offense committed in Indian country. Rather, under 25 U.S.C. § 2803, the Secretary may authorize tribal police to arrest a suspect for criminal acts committed on the reservation, and consequently, such activity is within the purview of 25 U.S.C. 2804(a).

A closely analogous case is United States v. Farkash, 952 F. Supp. 696 (D. Colo. 1996). In Farkash, the Defendant had engaged in what was deemed harassing behavior at a National Park Service (NPS) location toward his ex-girlfriend who was an NPS employee. Id. at 697. When Defendant returned to the NPS location, an NPS security guard ultimately denied Defendant access to the NPS location and called a Federal Protective Service (FPS) Officer. Id. at 697–98. The FPS officer arrived after Defendant left NPS property to walk with his leashed dog toward a local shopping mall. Id. at 698. When the FPS officer confronted Defendant, they were off federal

4

property. Id. Defendant denied being at the NPS building, refused to provide identification, and refused to obey the FPS officer's commands. Id. The FPS officer reached out to grab Defendant's arm, Defendant instructed his dog to bite the officer, the officer pulled himself close to Defendant, both fell, and a scuffle ensued. Id. Defendant was charged and convicted with assaulting a federal officer. Defendant argued that off federal property, the FPS officer was a civilian requiring any charge to be in state court. Id. at 699 n.5. The court rejected the argument, reasoning:

> Defendant argued at trial that [the FPS Officer] Sergeant Fero's status as a police officer ceased when he left federal property. Defendant points to no case that so holds, and this Court has found no such case. In the present matter, Sergeant Fero received a call from the security guard at the NPS building. He responded and was attempting to make contact with Defendant. Nothing presented at trial indicated that Sergeant Fero's actions were inappropriate in trying to contact Defendant. This Court finds that Sergeant Fero did not lose his status as a federal officer merely because his duties required him to follow Defendant onto private property.

Id. at 699. Likewise, this Court has found no authority that an on-duty federal officer loses the status of a federal officer upon leaving a federal enclave to pursue a person who engaged in criminal conduct within that federal enclave. See Ten Eyck v. United States, 463 F. Supp. 3d 969 (D.S.D. 2020) (tribal officer assisting in off-reservation arrest and subsequent off-reservation high speed chase was acting under color of federal law for Bivens claim purposes).

As is always the case in prosecutions for assault on a tribal police officer under 18 U.S.C. § 111, it remains for the jury to decide whether Officer Kumley was actually engaged in the performance of those official duties. However, Blue Bird's motion to dismiss should be denied because Officer Kumley leaving the reservation in a police chase that started on the reservation does not justify dismissal here.

**IV. Conclusion**

For the reasons explained above, it is

ORDERED that Defendant's Motion to Dismiss, Docs. 22, 24, is denied.

5

DATED this 3rd day of March, 2023.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE